THE STATE, Respondent, v. SCHOENWALD, Appellant.

1. Where, in a criminal case, an application for a continuance on the ground of the absence of a material witness is overruled, the supreme court will not reverse the judgment rendered against the defendant unless he was injuriously affected by being deprived of the testimony of such absent witness.
2. To warrant the conviction of an accused person of murder, it is not necessary that the evidence in the case should exclude every *possible* hypothesis but the guilt of the defendant.
3. A court, in the trial of a criminal case, is not bound to instruct, as to the effect of a doubt in the minds of the jury as to the guilt of the accused, unless the evidence is such as will warrant it; the jury should not be coaxed into a doubt by instructions, when there is no foundation for it in the evidence. The accused can be entitled to an instruction relative to the consequence of a doubt as to his guilt on the whole evidence in the cause; he has no right to single out each material fact and to ask the court to direct the jury that if they have a doubt as to the existence of such fact they will acquit.
4. Where, in a criminal case, a witness wilfully swears falsely as to any material fact in evidence, the jury are at liberty to disregard and reject the whole of the testimony of such witness; they are not bound to do so.
5. Malice, in its legal sense, means a wrongful act done intentionally without just cause or excuse.
6. In the trial of a person indicted for murder, the court may, by suitable instructions, if the evidence will warrant it, direct the jury that the case, as made out by the evidence, is one of murder in the first degree, and, if the evidence is believed, will not warrant a verdict for murder in the second degree, or for any of the degrees of manslaughter; such an instruction is no invasion of the province of the jury, nor can it be regarded as a comment on the evidence.
7. It is the duty of a judge in the trial of a criminal case to instruct the jury on all the law arising in the case, and it is the duty of the jury to respect the instructions of the court on the law of the case, and to find the prisoner guilty or not guilty according to the law as delivered by the court and the evidence as they receive it from the witnesses under the direction of the court.
8. It is not necessary, in a criminal case, in the entry of record of the empanneling of the jury, that the oath taken by the jury should be formally set forth. An entry, after setting forth the coming of the circuit attorney representing the State, as also of the defendant, and the jury [naming them,] proceeded as follows: " who being duly elected, tried and sworn the traverse between the parties aforesaid well and truly to try," &c. *Held*, sufficient.
9. The defendant in a trial for murder should be present in person throughout the trial, and his presence should appear from the record; an entry of the proceedings on the second day of the trial in the following form: "Now again come as well the *parties* aforesaid as also the jurors," &c., sufficiently shows the presence of the defendant.

*Appeal from St. Louis Criminal Court.*

The defendant Schoenwald was indicted for the murder of one John Lemuel Acres. The court gave the following among other instructions: " While I have thus defined murder in the first degree, the jury may remark that I fail to define murder in the second degree. I do this purposely, because, in my opinion, the case is not one of murder in the second degree, or one requiring instructions on the law of murder in the second degree. So of manslaughter in its various degrees. As murder is malicious killing, so manslaughter, generally speaking, has for its characteristic the existence of a heated state of the blood caused by a lawful provocation, or a combat suddenly ensuing between parties, no undue advantage being sought or taken on either side. The court omits, therefore, to instruct the jury upon the law of manslaughter in either of its degrees, because, upon the theory of a blow with a stone having been struck on the defendant by the deceased at or about the time of the stabbing, the court is of opinion that such act, if done by the deceased, does not constitute provocation on the part of the deceased toward defendant that can justly excuse or alleviate the act of stabbing under the circumstances as appearing from the evidence, even if the deceased struck defendant immediately at or before defendant stabbed him, and certainly not if the deceased struck defendant after defendant stabbed him, the court assuming in this connection that the act of stabbing was not done in self-defence. The above remarks are submitted to the jury hypothetically, that is, upon the hypothesis that it was the deceased who struck the defendant, and that he struck him at or about the time of the stabbing, and that it was defendant who stabbed deceased, but upon which matters, of course, the court expresses no opinion, but which are matters purely and absolutely for the consideration of the jury. The court, therefore, submits to the jury the consideration and determination simply of the proposition as to whether defendant is or is not guilty of the crime of murder in the first degree charged in the indictment."

The defendant was found guilty of murder in the first degree.

*Davis & Grammer*, for appellant.

I. The court ought to have continued the cause upon the application of the defendant. The absent witness was a material witness. So the court erred in excluding part of the deposition of Mrs. Harketh. It disclosed the fact of a personal difficulty and fight of the deceased with another person than the defendant on the evening of the homicide. (See Crawford v. State, 12 Georg. 142.) The case was one of circumstantial evidence, in part at least. None of the witnesses say who inflicted the fatal blow. The court should have instructed the jury that if the evidence did not exclude every other possible hypothesis than that of the guilt of the defendant, they must find the defendant not guilty. (Wills on Cir. Ev. 149, 158; Burrill on Cir. Ev. 152; Bradford's case, Celebrated Trials, 587; State v. Mathews, 20 Mo. 57.) The court ought to have given the instruction asked with respect to the effect of the false swearing of a witness. The law is not correctly stated in the instruction given on this subject. The word "material" as used by the court is improper; so the words "any other cause." The court erred in refusing the third instruction asked. It was not included in the general instruction given concerning doubt. (16 Ill. 1; 12 Georg. 142.) It is erroneous to say that every unlawful act is a malicious act in the sense of that term as employed in the definition of murder, either at common law or by statute. No act which is not attended by the ordinary signs of an evil purpose, or manifest disregard of natural and social duty and obligation, is malicious. (2 West. Law Jour. 490; 7 C. & P. 499; 2 C. & R. 229; 9 Metc. 121; Foster, Crown Law, 138.) A slayer is presumed to be guilty of murder in the second degree only, unless there be proof that the killing was of deliberate, settled, wicked purpose. (See 14 Edw. III., ch. 4; 4 Bl'k. Com. 195; Glanv. 1. 14, c. 3.) The court improperly charged the jury that "whenever it appears from the whole evidence that the crime was, *at* the

moment, maliciously, deliberately *or* intentionally executed, the killing is murder in the first degree." More than an intention to kill is necessary to constitute the crime of murder in the first degree. The court improperly commented on the evidence. The court was not expressing its opinion upon a question of law arising on the record, but upon the sufficiency of the facts proved to support a verdict of murder in the first degree. (See 18 Mo. 419; 12 Georg. 142; 17 Ala. 596; The State v. Ostrander, 30 Mo. 13; State v. Ross, 29 Mo. 49.) Upon an indictment for murder in the first degree the jury may return a verdict of murder in the second degree or of any of the degrees of manslaughter. (R. C. 1855, p. 640, art. 9, § 14; 5 Mo. 497; 6 Mo. 399, 240; State v. Ross, 29 Mo. 32; State v. Ostrander, 30 Mo. 13.) Granting that in a proper case the court may abstain from giving instructions as to the law of murder in the second degree, yet it is bound in every case not entirely free from doubt as to the degree of the offence, to give the law of the inferior degrees. This was a case not entirely free from doubt. (See 16 Ill. 1; 12 Geo. 142; Holder's case, 5 Georg. 101; Davis' case, 10 Georg. 441.) The constitution provides that the right of trial by jury shall remain inviolate; that in all criminal prosecutions the accused has the right to a speedy trial by an impartial jury of the vicinage; that he can not be deprived of life, liberty or property but by the judgment of his peers. The jury may convict of any inferior degrees of the offence charged. At the ancient common law, juries were judges of the law and the fact. The common law remained unaltered until an act of Parliament was passed taking away that right in the principality of Wales only. (Bushell's case, 6 State Trials, p. ——.) It was the intention of the framers of the constitution of this state to preserve that right inviolate. (See 1 Bald. 99; 2 Wilson's Lec. 372; 3 Johns. Cas. 369; 1 Wheel. C. C. 108, 221; 3 id. 97; 1 Park. C. R. 604, 595; 23 Verm. 14; 6 Shep. 346; 4 Blackf. 150; 5 Georg. 441; 10 Georg. 101.) The first case in which the right of an American jury to decide both the law

and the fact in a criminal case is denied is United States v. Battiste, 2 Sumn. 343. The right was denied by Judge Story in his charge. He mistakenly supposed that the judge who presided at the trial could not award a new trial. (2 Sumn. 99.) Down to 1842 it seems to have been the opinion of the bench and bar in this state that juries were in criminal cases the judges of the law and the facts. (See Malliso v. State, 6 Mo. 402.) The question as to the right and power of a jury to determine the law and fact in a criminal case has never been expressly made by counsel and decided by the supreme court. It is impossible to distinguish the power of a jury to decide the law and the facts in a criminal case from their right to do so. If they have the power, they have the right. When it is said that Congress or the legislature of the state, &c., have power to do certain acts, they clearly have the right to do such acts. It is impossible to separate the right from the power. If a jury have the power to find a verdict of manslaughter upon an indictment for murder, and it is the duty of the court to receive and record such verdict, they have a legal right to find such verdict. The question of moral right does not necessarily enter into and make a part of the question of power in the cases stated. Great diversity of opinion may exist as to what is moral right or moral wrong. Differences of opinion have existed among learned and upright lawyers and judges in relation to this very question of the right of juries, and yet no man has supposed that such difference of opinion implied a want of learning or moral culture; and yet judges have said that jurors by exercising this right " hazard a breach of their oaths" if they mistake the law. It may be objected that juries are not qualified by education, habits or modes of thought to decide questions of law in criminal cases any more than in civil cases; this may be admitted without any considerable degree impeaching the wisdom of the original institution of juries and their investiture with plenary power to decide both the law and the facts. Our ancestors knew from experience that the most learned and upright judges were not always

right in their decisions and judgments, and that many judges were the willing instruments of arbitrary power; that no one judge could be supposed better qualified from experience or by any other means whatever to pronounce upon the motives of men than twelve honest citizens chosen from the body of the people, free from all bias and judgment of the defendant's case. There is scarcely a criminal act known to the law in which the idea of a wicked intent or motive does not enter. No institution is so well adapted to the protection of the citizen against arbitrary power as a jury of twelve men with full power, after respectfully hearing the law from the court, to pronounce upon both the law and the facts and to render a general verdict. (2 Engl. 59; 10 Ark. 540; 5 Ala. 672; 1 Gratt. 559; 1 McCord, 529.) The jury were not sworn to render a verdict in the cause. (10 Ark. 540; 2 Engl. 59; 5 Ala. 672.) The record does not sufficiently show that the defendant was present in court during the second day of the trial. (R. C. 1855, p. 1191, § 16; 6 Ired. 164; 1 Overt. 434; 1 Wend. 91; 1 Ill. 109; 1 Chitt. C. L. 636.)

*Mauro*, (circuit attorney,) for the State.

SCOTT, Judge, delivered the opinion of the court.

This was an indictment for murder in the first degree under which the defendant was convicted and sentenced to be hung. From this judgment he appealed to this court, and has assigned numerous errors in the proceedings of the court below.

It is maintained that the court below erred in refusing to grant the defendant a continuance on the affidavit filed. The last application for a continuance was the third one, two continuances having been previously granted to the defendant. Although this court will not determine the weight to be given to the evidence of witnesses, yet when an application for a continuance on account of the absence of a witness has been refused and that refusal is assigned for error,

the facts proposed to be proved by the absent witness will be examined in order to ascertain whether the party has been injured by being deprived of the evidence of such witness. From an examination of the evidence proposed to be given by the absent witness, we are not prepared to say that if it had been heard by the jury, the verdict should have been different. The material fact to be proved by the witness was, that the defendant was not at witness' house the night the homicide was committed, the place where the witnesses for the State testified they saw the defendant just before the crime was perpetrated. This is negative testimony, and moreover, in addition to the witnesses on the part of the State who proved the presence of the defendant, a friendly witness, introduced by the defendant himself, testified that he saw him near the scene of the homicide with the wound the other witnesses swore he received in the affray with the deceased.

In the affidavit for the continuance it is alleged that the witness left about the first of July. The criminal court would by law commence its session on the second day of that month, at which the defendant was to be tried. Now it is a little suspicious that, as by law the prisoner was to be tried at that term, that nothing had been done at the beginning of it in order to be ready for trial, and that so material a witness, and one who must have naturally felt great sympathy for the accused, should depart at such a time without communicating his intention. At the July term the cause was continued on account of the sickness of the prisoner's counsel, and it was not until the next term that we hear of the absent witness. As this was the third application for a continuance, we can not say that the discretion of the court was improperly exercised, even had the evidence been of a more decided character than it was.

For the reason before stated, we are of the opinion that the exclusion of that part of Mrs. Haskett's deposition which related to a previous difficulty the deceased had had on the day of his death with another person did not injuriously

affect the accused. As the case appears to us, we can not see how the fact excluded could have benefitted him.

It is objected to the correctness of the judgment below that as the proof of the defendant's guilt rested on circumstantial evidence, the court erred in refusing to instruct the jury as to the law governing such cases as prayed by his counsel. The instruction was to the effect, that if the jury believed that the evidence in the case did not exclude every other possible hypothesis than that of the guilt of the defendant, they must find him not guilty. The credibility of the witnesses, who deposed to the slaying of the deceased by the defendant, was a subject for the consideration of the jury. The jury have based their verdict on the evidence of those witnesses and consequently must have believed them. From the testimony it is impossible to say that the guilt of the accused rested on circumstantial evidence in that sense which would have warranted the court in intimating to the jury that there was a reasonable doubt or that the evidence did not exclude every other reasonable hypothesis. The instruction as worded is not law, nor is it supported by the books to which reference was made. If every *possible* hypothesis is to be excluded but that of the guilt of the defendant, it is obvious that no conviction could be had in any case. The court gave the usual instruction in relation to the effect of a doubt in the minds of the jury as to the guilt of the accused. In the case of Nicholas v. The State, 6 Mo. 6, this court held that the judge, on the trial of a prisoner, was not bound to give an instruction as to the effect of a doubt in the minds of the jury as to the prisoner's guilt but in cases where the evidence was of such a character as would warrant it. A court is not to coax a jury into a doubt by instructions, when there is no foundation for it in the evidence. In connection with this subject, we will observe that the court did not err in refusing to give the instruction to the effect that if all the facts and circumstances in evidence left it in doubt whether the defendant or some other person inflicted the fatal blow, they could not find the defendant guilty. It is

the well settled law here that the prisoner is only entitled to the instruction relative to the consequence of a doubt as to his guilt on the whole evidence in the cause; and that he has no right to single out each material fact necessary to be proved and ask the court to direct the jury that if they have a doubt as to the existence of such facts they will acquit him.

Another error assigned is the refusal of the court to instruct the jury that, if they believe that any witness has wilfully sworn falsely in his testimony, that the jury are at liberty to disregard all the testimony given by such witness. In lieu of this instruction, the court directed the jury that if they believed, from the evidence of the witnesses or any other cause, that any witness or witnesses have wilfully sworn falsely as to any material evidence in the cause, they are at liberty to disregard and reject the whole of the testimony of such witness or witnesses. The instruction as given by the court was in the form heretofore approved. (State v. Dwire, 25 Mo. 554.)

In my opinion, the court has no authority to prescribe any rules to the jury by which they are to determine the credibility of the witnesses. If the court can by authoritative rules direct the jury in weighing the credibility of witnesses, then the court and not the jury determines the weight to be given to the evidence, a matter exclusively within the province of the jury. The jury, from their experience and knowledge of the common concerns of life, are presumed to be the best triers of facts. They take with them into the jury box their experience in life, which has enabled them to form the rules by which they will ascertain the weight to be given to the evidence of any one who speaks in their sight and hearing, having due consideration of the circumstances by which he is surrounded, his character, if known, and any influences which may operate upon him. Thus the rules are formed which the law supposes that jurors will apply in making their verdict on the evidence. If the court has a right to instruct, then the jury are bound to obey. If their verdict is formed in pursuance to rules concerning the weight to be attributed

to evidence, dictated to them by the court, is the verdict a judgment on the facts by the court or by the jury? In considering this subject, we overlook the difference between the system of practice now prevailing and that formerly in use. Our courts can not now, as formerly, comment on the evidence. When the practice was for the courts to comment on the evidence, the jury were always made to understand the weight to be attached to such comments and to the rules the judge might suggest for the weighing of the evidence. They were told that such comments were the mere opinions of the judge, who had no right to decide the facts, and were not binding on them; that they might disregard his opinion as to the weight of the evidence; it was mere advice; it was their province to find such a verdict as they deemed right, disregarding any thing they might have heard from him. Now, because his right has been taken away from the courts, an effort is made to substitute for the advice formerly given to juries, which they would receive or reject as they thought right, authoritative rules, by which the jury are bound to be governed in determining the weight to be given to the evidence. If they are not bound by the instruction, then it is a comment and is not warranted by law. These instructions are generally asked by the counsel for the accused, and the motive to them is the hope that they may operate with the jury as an endorsement by the judge of an onslaught on the character of a witness, thinking that the jury will take such an instruction as an intimation from him that there is a ground for disbelieving the evidence. In my experience, the squabbles about such instructions have proved a great delay in the administration of justice, when it must be obvious to all that they have no influence, and that there is no occasion for them, as the evidence of the witnesses is always open to the comment of the counsel, who will only ask such instructions with the hope that they will operate with the jury as a sanction by the judge of the comment that may have been made. (State v. Anderson, 19 Mo. 241.) These are only my own views.

There was no error in the refusal of the court to charge the jury that if the testimony of any witness bore upon its face the mark of gross improbability it is not necessary that such witness should be impeached by other witnesses, but the jury may disregard the testimony of any such witness. This instruction in effect was given by the court in the direction made as to the rule by which the jury would be governed in ascertaining the weight to be given to the evidence. Although the instruction stands as an abstraction, yet when it is applied to the evidence of any witness, it is nothing more than an attempt to control the jury in determining the credibility of the witnesses.

We see no error in the court's definition of malice. The usual definition of the word was given in directing the jury as to what constituted murder in the first degree. The definition subsequently given may be open to criticism, but it did not contradict the first instruction, nor was it objectionable in a way that affected the defendant. The best definition of malice to be met with is that given by Justice Bayley, in Bromage v. Brosser, 4 Barn & Cres. 255. "Malice," says he, "in common acceptation, means ill-will against a person; but in its legal sense, it means a wrongful act done intentionally without just cause or excuse." The defect of the instruction given was, according to this definition, the omission to state that the act should have been done intentionally.

It is made a ground of error that the court charged the jury, that "whenever it appears from the whole evidence that the crime was at the moment maliciously, deliberately, or intentionally executed, the killing is murder in the first degree." This disjunctive conjunction "or" would have rendered such an instruction, had it been given, erroneous. But the record shows that the words objected to were only a part of an instruction, and that the whole instruction was correct.

We are not of the opinion that the court erred in omitting to instruct the jury as to the law of murder in the second

degree and as to manslaughter in its various grades. Where, under the indictment, the accused may be convicted of murder in the first degree or of any of the less grades of homicide, in cases in which the evidence will warrant it, we conceive that the court in its discretion may direct the jury by suitable instructions that the case, as made out by the evidence, of which they are the judges, is one of murder in the first degree, and if the evidence is believed it will not warrant a verdict for murder in the second degree, or for any of the degrees of manslaughter. Such an instruction is no invasion of the province of the jury, nor can it be regarded as a comment upon the evidence. It is simply declaring the law upon the facts as the jury may find them. To say that certain facts, if believed, constitute an offence of one degree, and no other or less degree, is no comment on the evidence. As jurors are so much inclined to let feelings of mercy or tenderness to the accused sway them in trials for murder, it is expedient that the courts should have such a right. Jurors have no power to permit their private feelings to interfere with the discharge of a sacred duty with which they have been entrusted. The prerogative of mercy is not in courts and juries; it belongs to another department of the government. Under such circumstances the responsibility of the verdict is not on them, but on the laws.

In the case of Hardy v. The State, 7 Mo. 609, it was declared that it is the duty of a judge of a criminal court, as well as all other courts of record, to instruct the jury on all the law arising in the case, and it is the duty of the jury to respect the instructions of the court as the law of the case, and to find the prisoner guilty or not guilty according to the law as delivered by the court, and the evidence as they receive it from the witnesses under the direction of the court. Foster, in his crown law, page 256, says, in cases of doubt and real difficulty, it is commonly recommended to the jury to state facts and circumstances in a special verdict. But where the law is clear, the jury, under the direction of the court *in point of law*—matters of fact being still left to their

determination—may, and if they are well advised always will, find a general verdict conformably to such direction. This has always been regarded as the well-settled law of this state, and should never be departed from so long as there is a trial by jury.

It is alleged, as a ground for the reversal of the judgment of the court below, that it does not appear upon the face of the record that the jury was properly sworn to try the prisoner. The books state the form of the oath to be administered in criminal trials. But it does not appear that the oath as administered should be entered of record. In the appendix to 4 Blackstone's Commentaries, there is the record of an indictment and conviction of murder. There the swearing of the jury is entered in this form: " And the jurors of the said jury, by the sheriff for this purpose empannelled and returned, to-wit: David Williams, &c., being called, come; who being elected, tried and sworn to speak the truth of and concerning the premises, upon their oath say," &c. So, in Rastel's entries, 385, the form is in law Latin : " *Ideo fiat inde jur. jur. ven. qui ad hoc electi, triati et jurati dic. super sacramentum suum, quod prædictus J. S. in nullo est culpabilis de felonia prædicta,*" &c. In the case before the court the entry is, " who being duly elected, tried and sworn the traverse between the parties aforesaid well and truly to try," &c. Chitty says that traverses are of two kinds, general or special ; " the general traverses or denials were the general issue." (Chitty on Pl. 637.) We consider the entry tantamount to the declaration that the jury were sworn to try the issue between the parties ; and as the approved forms of entries in capital cases do not require that the oath should be formally entered of record, we consider that on the record as made out there is no error.

It is further alleged, as a ground for a writ of error, that it does not appear that on the second day of the trial the defendant was present in person. The entry is : " Now again come as well the parties as aforesaid as also the jurors aforesaid," &c. No doubt but that, by the common law, no one

could be tried for an offence affecting life or limb but when he was personally present. This principle has been incorporated into our code of laws. (R. C. 1855, p. 1191, § 16.) But we are not satisfied that the record sustains the objection. On the first day of the trial the State appeared by her attorney and the defendant in proper person. On the second day of the trial the entry above stated was made. Now as the parties on the second day appeared "as aforesaid," we are not to infer that the defendant did not appear in person. If it had been entered that he appeared by attorney, or if it appeared from the record, by its silence on the subject, that he was not present, no doubt the judgment would be erroneous. But when it is stated that a party appeared, nothing showing the contrary, we must take it that he appeared in person. The case of the State v. Craton, 6 Ired. 164, shows that it is not necessary that it should appear in so many words that the defendant appeared in proper person, but that the fact of his presence may be gathered or inferred from other parts of the record.

The other judges concurring, the judgment will be affirmed.