STATE OF MISSOURI, Respondent, v. GEORGE STARR, Appellant.

1. *Crimes — Homicide.* — The law of homicide may be regarded as definitely established in this State by a series of well considered and consistent decisions. Where the evidence all tends to prove a case of murder in the first degree, or of justifiable homicide, it is proper for the court, by its instructions, to confine the attention of the jury to the two points.

2. *Crimes—Murder.*—The right of self-defence, which justifies homicide, does not imply the right of attack, and the plea cannot avail in any case where the difficulty was induced by the act of the party accused in order to afford him a pretext for wreaking his malice.

3. *Crimes — Murder — Manslaughter.*—To have the effect to reduce the guilt of killing from that of murder in the first degree to manslaughter, the provo-

cation must consist of personal violence; neither words of reproach nor insulting gestures can have this effect.

4. *Practice— Trial—Evidence.*—When it is proposed to contradict a witness by proof of different statements made, the attention of the witness must be called to the time, place and person involved in the supposed contradiction.

*Appeal from the St. Louis Criminal Court.*

*Shreve* and *Mauro,* for appellant.

*Vastine, Cline & Jamieson,* and *C. P. Johnson,* for respondent.

WAGNER, Judge, delivered the opinion of the court.

The appellant was indicted at the March term, 1865, of the Criminal Court of St. Louis, for the killing of William L. Smith. At the November term following he was tried and convicted of murder in the first degree and sentenced to be executed. Many reasons are assigned for a reversal of the judgment below, but the main ones relied on may be classed in four propositions : 1. That the court erred in declaring the law of homicide. 2. That the court erred in refusing to declare the law of manslaughter. 3. That the court erred in refusing to instruct in reference to provocation. 4. That the court permitted illegal evidence to go to the jury.

The indictment is founded on the first section of the second article of the statute respecting crimes and punishments (R. C. 1855, p. 558), which declares that every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree. The fourth section declares homicide to be justifiable when committed "in resisting any attempt to murder a person, or to commit any felony upon him or her, or in any dwelling-house in which such person shall be," &c.

As to the first objection, we have been unable to discover any error in the instructions given by the court on its own

motion, or at the instance of the counsel for the State, defining the law of homicide. Every instruction complained of has been repeatedly sanctioned by this court, as will be seen by referring to the various books of Reports. The law of homicide may be regarded as definitely established in this State by a series of well considered and consistent decisions, and it ought not to be unsettled or varied without gross mistakes have been made. We perceive no such mistakes, but on the contrary believe the former adjudications of this court contain a correct exposition of the statute. It is the duty of the court to instruct the jury with reference to the testimony in the case, and where the evidence all tends to prove one offence, it is wrong to mislead the jury by giving instructions in relation to a different one. Where under the indictment the accused may be convicted of murder in the first degree, or of any of the less grades of homicide, in cases in which the evidence will warrant it, the court, in its discretion, may direct the jury by suitable instructions that the case, as made out by the evidence, of which they are the judges, is one of murder in the second degree, and, if the evidence is believed, it will not warrant a verdict for murder in the second degree, or for any of the degrees of manslaughter—State v. Schoenwald, 31 Mo. 147. This is simply declaring the law as applicable to the facts. It is a mistaken notion that has sometimes prevailed, that in criminal cases courts are nothing but aids to the juries. The truth is, that, in criminal as well as civil cases, juries are aids to the court. It is their duty to ascertain the facts, and the court must apply the law to the given state of facts thus found.

In this case, the court declared the law on the theory that the killing was either murder in the first degree, or it was justifiable homicide. A careful review of the testimony satisfies us that this view was correct. The defence was conducted purely on this basis. Had the jury believed the evidence on the part of the defendant, they would have been fully warranted in finding it a case of justifiable homicide— a killing in self-defence. There was not a scintilla of evi-

State v. Starr.

dence, so far as we have been able to discover, going in the least to show that it came within either of the grades of manslaughter.

The defendant requested the court to give the following instructions:

"1. If the jury shall believe from the evidence adduced in the case that the defendant, Starr, had reasonable cause to apprehend a design on the part of the deceased to commit a felony, or to do some great personal injury to the defendant, and that there was reasonable cause to apprehend immediate danger of such design being accomplished, and that he killed the deceased in order to prevent the accomplishment of such design, then you should acquit the accused on the ground that such homicide is justifiable in the law because committed in self-defence. And the court further instructs the jury, that it is not all necessary, in order to acquit on the ground of self-defence, the danger should have been real or actual, or that such danger should have been then impending and about to fall on him; it is only necessary that the jury shall believe that the defendant had reasonable cause to apprehend that there was immediate danger of a design to commit a felony, or to do great bodily harm to the defendant to be about to be accomplished.

"2. If the jury shall believe from the evidence that the deceased voluntarily entered into an altercation with the defendant, and because of certain offensive language applied to him, or which he supposed was applied to him by the deceased, stepped up to the door of the accused, in which the accused was standing, and kicked the accused, and sprang upon him with a knife in his hand, and that from such circumstances the accused had reasonable cause to apprehend a design on the part of the deceased to do him great bodily harm or some great personal injury, and that there was reasonable cause to apprehend that there was immediate danger that such design would be accomplished, and to prevent such design defendant killed deceased, then such killing was justifiable under our law, because done in his self-defence."

The court gave the above instructions, but annexed to them the subjoined qualification :

"The foregoing instructions are given with this qualification, that the right of self-defence which justifies homicide does not imply the right of attack ; and the plea of justification in self-defence cannot avail in any case where it appears that the difficulty was sought for and induced by the act of the party in order to afford him a pretence for wreaking his malice."

To which action of the court, in annexing the above qualfication to the instructions, the defendant, by his counsel, excepted. The above instructions presented the law of self-defence, or justifiable homicide, in a remarkably favorable aspect toward the defendant. The qualification was necessary in view of the evidence in the case. The testimony tended to show that the accused sought the altercation, and was instrumental in bringing it on ; and if the jury found such to be the fact, the law would not permit him to shield himself behind the doctrine of self-defence. Besides, the qualification is couched in the very language of Wharton, and commends itself for its justice, and is well supported by authority—Whart. on Hom. 197 ; 1 Russ. on Cr. 521, 585 ; 1 Hale, 451 ; State v. Ferguson, 2 Hill (S. C.), 619 ; State v. Lane, 1 Ired. 113. But the instruction to which the greatest objection is made is as follows :

"If you find from the evidence that the defendant and the deceased had a difficulty which resulted in the death of the deceased, and that defendant commenced the difficulty, or brought it on by any wilful or unlawful act of his, or that he voluntarily and of his own free will and inclination entered into the difficulty, then there is no self-defence in the case, and you should not acquit on that ground ; and in that case it makes no difference how high the passion of the defendant may have arisen, nor how imminent the peril may have been in which the accused was placed during the conflict."

This instruction is copied precisely from one in the case of the State v. Shoultz, which was approved and sanctioned by

State v. Starr.

this court, although it was not specially commented on by Judge Ryland, who delivered the opinion in that case. We do not consider that this instruction is open to the severe criticism which has been placed upon it by the defendant's counsel, that "our statute enacts that homicide committed in self-defence shall be justifiable in resisting a felony, but this declares it shall be murder in the first degree." As an abstract proposition of law, it is certainly very broadly stated, but is justified in reference to the evidence here. There was evidence to show that the accused had induced the deceased to disarm himself; that he had incited and brought about the difficulty or altercation, and then had taken advantage of the helpless condition of the deceased, and inflicted mortal wounds with a deadly weapon. One who is without fault himself, may, when attacked by another, kill his assailant if the circumstances be such as to furnish reasonable ground for apprehending a design to take away his life, or do him some great bodily harm, and there is also reasonable ground for believing the danger imminent that such a design will be accomplished; but he will not be allowed to be the active inducing cause of the circumstances to provoke the difficulty, and voluntarily engage in the altercation, and then rely on justifiable homicide as a protection. A man cannot be the aggressor and then claim immunity under the plea of self-defence.

We have not examined the instructions *seriatim;* it was deemed useless, for, as before stated, they have heretofore received the approbation of this court. Our statute defines what constitutes murder in the first degree, and appears to be substantially a transcript from a Pennsylvania statute. Under that statute, it is contended that the Pennsylvania courts hold, that, unless the circumstances of malice are proved, the law will presume the unlawful killing murder of the second degree. In Commonwealth v. Dougherty the act received a thorough examination and construction, and the court said: "From the words of this law it would seem four

modes of killing are enumerated, any one of which will be murder in the first degree. In the last, viz., where a man kills another in the perpetration or attempt to perpetrate the crimes mentioned, the intention is excluded as not necessary to constitute the crime of murder in the first degree. But with respect to the three other modes of killing, viz., by poison, lying in wait, or any other kind of deliberate killing, the intention is still the essence of the crime and its guilt, since the law as well as before consists in taking away the life of a human creature with circumstances which show a cool depravity of heart, or a mind wholly conscious of its views and designs. Whenever this is the case, whenever it appears from the whole evidence that the crime was, *at the moment*, deliberately or intentionally executed, the killing is murder in the first degree. It is sufficient to constitute this crime if the circumstances of a wicked and depraved disposition of mind, or, as it is expressed in the law, of wilfulness and deliberation, are proven, though they arose and were generated at the period of the transaction. This construction of the law is certainly a sound one, because it is perfectly agreeable to the words ; and the *intention*, as it ought, still remains and constitutes the essence of the offence"—1 Bro. App. 21. And it has been held repeatedly that to make the killing premeditative according to the true meaning of the act, it is not necessary that the design should be *long* formed ; but if the design to kill be formed previous to the act, that it is murder in the first degree, and that the intention to kill, though immediately executed, is still the true criterion of the crime, and that the intention of the accused can be collected only from his words and actions—Pa. v. McFall, Add. 255 ; Respublica v. Mulatto Bob, 4 Dall. 146 ; State v. Dunn, 18 Mo. 419.

With this construction of the law, the defendant has no ground of complaint against the action of the court ; for the whole case was fairly put to the jury, with the declaration that " to constitute murder in the first degree under our

statute, the killing must not only be malicious, but it must have been a wilful, deliberate and premeditated killing. Malice, deliberation and premeditation are the very essence of the crime; they are facts in the case, all of which must be found affirmatively by a jury before they can convict of murder in the first degree."

Nor do we conceive that the court committed any error in refusing to declare the law of provocation as requested by the defendant. There was no evidence which would have justified such an instruction. Where there is lawful provocation, the law,.out of indulgence to human frailty, will reduce the killing from the crime of murder to manslaughter; but neither words of reproach, how grievous soever, nor indecent provoking actions or gestures, however much calculated to excite indignation or arouse the passions, are sufficient to free the party killing from the guilt of murder. To have the effect to reduce the guilt of killing to the lower grade, the provocation must consist of personal violence— Whart. Crim. L. 436; State v. Merril, 2 Dev. 269; Beauchamp v. State, 6 Blackf. 299; Oneby's case, 2 Ld. Raym. 1485; 1 Russ. on Cr. 435; Whart. on Hom. 170. This rule is well established, and we imagine it would not be the part of wisdom to substitute in its place one fluctuating or less rigid, which would require the accused to be judged in each case according to the excitement incident to his natural temperament when aroused by real or fancied insult given by words alone—Kely. 135. There must be an assault upon the person, as where the provocation was by pulling the nose, purposely jostling the slayer aside in the highway (Lannusses' case, 1 Hale P. C. 455), or other direct and actual battery—Rex v. Stedman, Foster, 292. But even in such cases it will be unavailing where death ensues in a combat upon provocation sought by the slayer, or upon a punctilio proposed by him, such as challenging the deceased to take a pin out of his sleeve if he dared—3 Greenl. Ev. § 147.

We have wholly failed to observe anything in the action of

the Criminal Court operating to the prejudice of the accused. The law was fairly declared, and if his conviction was the consequence, he is only suffering the penalty which the law hath annexed to his unfortunate act. Those who are entrusted with the administration of the law must not be swayed or diverted from the path of duty by their sympathies. Violence and lawlessness are fearfully prevalent in the land. The almost general habit of carrying concealed and deadly weapons, and the disposition to avenge every affront or grudge with a strong hand, are but too painfully manifest. Under such circumstances the only security and protection is to be found in the determined and impartial enforcement of the law.

The next question is, did the court err in permitting illegal testimony? Anna Foster was a witness for the defence, and on her cross-examination the counsel for the State asked her these questions:— Q. " Did you not tell Haggerty, the morning after the murder, that you did not see the difficulty at all ?" A. "I did not." Q. "Did you never tell him so ?" A. " No, I did not." The record does not disclose whether any further questions were put to the witness or not, but she continues in the narrative form, "I did not tell Haggerty that I saw nothing of it. I know Mrs. Balthouser; she lived in the yard next door; had a conversation with her next morning; don't know that I told her I knew nothing about it. I believe I did tell her I knew nothing about it." These questions were asked, and this testimony given, without any objections on the part of the defendant's counsel.

The State then introduced Mrs. Balthouser and Mr. Haggerty to discredit the witness, and show that she had made different statements from those contained in her testimony before the court. The defendant's counsel objected to the admissibility of their evidence for this purpose, on the ground that the proper foundation had not been laid, and that the attention of the witness had not been directed to the time, place and circumstances of the alleged conversation. The

general rule which governs in the production of verbal testimony to impeach the credit of a witness who has made contradictory statements is deduced by the text writers and the courts from the opinion of the judges in the Queen's case, 2 Brod. & Bing. 313–14, in which case Abbott, C. J., in delivering the unanimous opinion of all the judges, states the practice to be, without exception, that where it was intended to bring the credit of a witness into question by proof of anything that he might have said or declared touching the cause, the witness must first be asked upon cross-examination, whether or not he has said or declared that which is intended to be proved. And in another case Tindal, C. J., says, "I understand the rule to be, that before you can contradict a witness, by showing that he has at some other time said something inconsistent with his present evidence, you must ask him as to the time, place and person involved in the supposed contradiction. It is not enough to ask him the general question whether he ever said so and so, because it may frequently happen that upon the general questions he may not remember having so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he had formerly said"— Angus v. Smith, 1 Mood. & Malk. 474. And this is quoted and approved as the correct exposition of the rule by Phillips and Greenleaf—2 Phil. Ev. 959, Am. ed. 1859; 1 Greenl. Ev. § 462. This course of proceeding is for the protection of the witness. It is to give him an opportunity to recollect the facts and to correct the statement when necessary, by a re-examination where his veracity is attempted to be impeached. The questions propounded to the witness, as furnishing grounds preliminary to an impeachment by Mrs. Balthouser's testimony, have not been preserved in the record, and as no objections appear to have been made by defendant's counsel, it will be presumed that the decision of the court was correct. But were it otherwise the ruling of the court could not be disturbed, for the witness admits the

very facts testified to by Mrs. Balthouser. As to the question in relation to what the witness told Haggerty, it is unquestionably wanting in one of the essential ingredients requisite in laying a foundation for an impeachment, viz., place. The time and person are named, but no place is designated. In a cause like this, involving such momentous consequences, where the life of a human being is suspended on the issue, and where the administration of justice should be not only free from reproach, but even from the appearance of reproach, we might regard the omission as fatal could we see that even by possibility the accused had been injured in consequence of it. But the testimony of Haggerty has no tendency whatever to disparage the witness' credibility ; on the contrary, he substantially corroborates and confirms it. He states that he did not see Anna on the day next after the commission of the murder, but on the same day next thereafter he had a conversation with her, when she related to him about the same facts she testified to on her examination in chief ; he doees not pretend to contradict her. His mere opinion that he did not believe she saw the altercation, taken in connection with her declarations which he was repeating, could have had no influence in determining the minds of the jury. It is impossible that this evidence could have worked harm to the defendant.

The action of the court in permitting counsel other than the circuit attorney to prosecute on behalf of the estate, in violation of its rules, will not be reviewed here. It was a matter resting in their sound discretion of the court.

The separation of the jury we deem satisfactorily accounted for, and there is no imputation against them which would warrant us in disturbing their verdict on that account.

The judgment is affirmed. Judge Holmes concurs ; Judge Lovelace absent.