THE STATE v. HARDY, *Appellant.*

1. **Criminal Law**: SELF-DEFENCE. The right of self-defence does not imply the right of attack, and it will not avail where the defendant voluntarily enters into or brings on the difficulty by any wilful act on his part.

2. —— : QUARRELSOME MAN. The mere fact that one is a bad or quarrelsome person is no excuse for killing him.

3. —— : MURDER. Where the defendant, after having provoked the difficulty, before entering into it, prepared himself with a deadly weapon which, in the encounter, he used with fatal effect upon the deceased, who was backed up against a building and in the power of the defendant, the instructions are properly confined to murder in the first and second degrees.

*Appeal from Morgan Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*D. E. Wray* and *Draffen & Williams* for appellant.

(1) The court erred in giving the fourth instruction asked by the state. It does not follow that the defendant was guilty of murder because he voluntarily

entered into the combat in which the deceased was killed. *State v. Partlow*, 90 Mo. 608 ; *State v. Berkley*, 92 Mo. 41. (2) The court erred in giving the sixth instruction for the state. It was proper for the defendant to show that the deceased had the reputation of being a quarrelsome, turbulent, and violent man. *State v. Bryant*, 55 Mo. 75 ; *State v. Downs*, 91 Mo. 19 ; *State v. Foley*, 12 Mo. App. 431 ; *State v. Alexander*, 66 Mo. 148. (3) The evidence justified an instruction on manslaughter so as to authorize a finding for a lower grade of homicide than murder in the second degree. *State v. Umfried*, 76 Mo. 404 ; *State v. Branstetter*, 65 Mo. 149 ; *State v. Berkley*, 92 Mo. 41 ; *State v. Ellis*, 74 Mo. 207 ; *State v. Deeckman*, 11 Mo. 538 ; *State v. Chambers*, 87 Mo. 406. (4) It was the duty of the court to have given instructions as to manslaughter, whether asked or not. *State v. Palmer*, 88 Mo. 568 ; *State v. Branstetter*, 65 Mo. 149 ; *State v. Wilson*, 85 Mo. 134 ; *State v. Barham*, 82 Mo. 67 ; *State v. Banks*, 73 Mo. 592 ; *State v. Stonum*, 62 Mo. 596 ; *State v. Jones*, 61 Mo. 232. The doctrine of *stare decisis* should prevent the change of a rule, established by so long a line of precedents, where a defendant, whose liberty is involved, has acted upon it when upon his trial.

*B. G. Boone*, Attorney General, and *A. L. Ross*, Prosecuting Attorney, for the state.

(1) The instructions given by the court are in the usual form and have repeatedly received the sanction of this court. *State v. Vansant*, 80 Mo. 67 ; *State v. Thomas*, 78 Mo. 327 ; *State v. Gee*, 85 Mo. 647. (2) The evidence shows that the defendant was guilty either of murder in the first or second degree, or that he should have been acquitted. The court was, therefore, not authorized to give an instruction for manslaughter in any degree. *State v. Ramsey*, 82 Mo. 133 ; *State v. Jones*,

79 Mo. 441 ; *State v. Snell*, 78 Mo. 244 ; *State v. Johnson*, 76 Mo. 121.   Defendant sought the quarrel and used a deadly weapon which he took out of his pocket and prepared for use before entering into the difficulty.   This is sufficient proof of malice and shows that he entered into the difficulty with the design formed to take life, and his offence is murder.   *State v. Partlow*, 90 Mo. 608.

NORTON, C. J.—Defendant was indicted in the Morgan county circuit court for murder in the first degree for killing William Arnold, in August, 1885, and being put upon his trial, was convicted of murder in the second degree, and he was sentenced to imprisonment in the penitentiary for ten years.   He has appealed from this judgment, and it is insisted that the court erred in giving the following instruction :

"The right of self-defence does not imply the right of attack, and it will not avail in any case where the defendant voluntarily enters into or brings on the difficulty by any wilful act of his ; therefore, if the jury believe, from the evidence, that defendant voluntarily provoked and entered into the difficulty resulting in the death of Arnold, then he cannot justify on the ground of self-defence."   Nothing further need be said of this instruction than that it has received the repeated sanction of this court.   *State v. Starr*, 38 Mo. 270 ; *State v. Linney*, 52 Mo. 40 ; *State v. Underwood*, 57 Mo. 50 ; *State v. Hudson*, 59 Mo. 135 ; *State v. Rose*, 92 Mo. 201.

It is also insisted that the court erred in giving the following instruction :

"The jury are instructed that in law it is the same offence to kill a bad man as it is to kill a good man, and although the jury may believe, from the evidence, that deceased, when intoxicated, was a bad or quarrelsome man, this fact alone will not justify or excuse the defendant for the killing of deceased."

This instruction enunciates a correct principle, which doubtless would have suggested itself to the jury had the instruction not been given, and we cannot see how defendant was or could have been injured by it.

The court instructed the jury as to murder in the first and second degrees. No complaint is made as to these instructions, but it is claimed that the court erred in not giving instructions as to some lower grade of homicide. It appears that defendant Hardy, and Arnold, the deceased, lived in the town of Syracuse, and in the afternoon preceding the difficulty went out to Otterville, a neighboring village, to arrange about getting ground upon which to put a swing at a picnic. Upon their return to Syracuse about half-past nine o'clock p. m., somewhat under the influence of liquor, they went to a shoemaker's shop, where George Sullivan, Hubbard, and one Kiess were taking care of a man by the name of Hendricks, who was lying on the floor in a drunken stupor. Near twelve o'clock Arnold went out, lighted his pipe, and came back into the shop smoking. Hardy wanted Arnold to give him the pipe, which Arnold refused to do. This made Hardy mad, and he began to step back and forth over the body of Hendricks lying at full length on the floor, and made motions at the wall with his fists. All parties soon after left the shop, and Arnold and Hardy began talking about putting up the swing at Otterville. Arnold said he had the ground rented, and Hardy said he would put the swing up on that ground. Arnold replied that if he (H.) did, he (A.) would have half the swing took in. Nothing more was then said.

After a while Hardy commenced on Arnold again about the swing, when John Sullivan remarked to Hardy that it was useless for him (H.) and Bill, meaning Arnold, to have a row about such a thing. Then Hardy turned upon Sullivan, saying: "You d—d s—n of a b—h this is the second row of mine that you have interfered with."

Sullivan then slapped him, and told him not to use such words. Repenting almost immediately of his action, Sullivan said to Hardy: "Charley, I am your friend, come and I will go home with you." Very soon afterwards, however, Hardy, after a few words with Sullivan, drew his (H.'s) knife on him (S). Sullivan caught him, and finding he could not get the knife, called on the others to help. Arnold tried but could not take the knife from Hardy. Sullivan, still holding Hardy's arm, asked Arnold to go and get T. Huff, who lived near, to come and take the knife from Hardy. Huff came, took the knife, and went away. It was then about half-past one or two o'clock a. m. Soon afterwards Sullivan went home, Kiess and Arnold went away, and Hubbard and Hardy walked down to the railroad depot, talked awhile, then walked up the track, and upon returning to the depot they sat down at the east end of the platform.

After they had been sitting there for a half hour, Arnold and Kiess came up. Kiess lay down on the platform and went to sleep, while Arnold sat down on one side of Hubbard, Hardy being on the other, and the three sat and talked quietly and pleasantly for some time. Then Hardy got up on the platform behind the others, and after standing there a few minutes, he began unrolling a pair of scissors from his handkerchief which he had taken out of his inside pocket. He was still slightly intoxicated, but not near so much as in the early part of the night. He seemed mad, and when he had unrolled the scissors he said: "You thought you had got all I had from me when you took my knife, but you were mistaken." He referred to the taking of his knife when he drew it on Sullivan an hour or more before. Hardy, in an angry tone, as though mad, kept saying that he had no friends; no words indicating a quarrel had passed between Arnold and him from the time Arnold came up, and even while Hardy stood with open scissors in his hand Arnold still sat on the platform and

had said nothing. Hubbard, when he saw Hardy unroll-
ing the scissors, got up beside him and tried to quiet him.
He paid no attention to Hubbard, and continued to
express . himself in an angry manner, when Arnold
jumped up and said, "Charley (meaning Hardy) there is
not a d—d bit of use of you talking that way, I am your
friend."

Hubbard then says : "As soon as Arnold got up,
knowing Hardy's disposition, I knew if I did not keep
them apart there would be a fight. I took hold of
Hardy and tried to get him away, talked to him and
tried to drown Arnold's voice. I kept talking to Hardy
and trying to get him away. There was a sideling
(inclined) place by the platform, and Hardy was stand-
ing about three feet from it near the middle of the plat-
form. I took Hardy by the arm and told him to come
and go home. I got him down to the bottom of the
sideling place, and saw that I could not get him any
further. He was talking to Arnold all the time. If he
had his scissors out at this time I did not notice them.
He was not trying to get to Arnold. Arnold then came
down where we were. I saw I could do nothing with
Hardy, so I went to Arnold and told him to come away
and I would get him out of trouble. I would have got
him away if he had been at his senses. I mean by not
being in his senses that he had been drinking. I took
hold of Arnold and he stood still. I saw they (H. and
A.) were getting warm with words, and I was talking to
Arnold trying to get him away. He (A.) said he had
left town once for one man, and he would not do it again.
Then the conversation between Hardy and Arnold about
stopped. However, Arnold went back to where Hardy
was. I do not know who opened the conversation. I
saw I could do nothing with Arnold, so I went back to
Hardy, got hold of him, and told him to come on and
go with me. About this time Arnold said to Hardy :
"Charley, G—d d—n you, if you want to fight come on,

I am ready for you.' These are the first words that I remember. Hardy then said something and Arnold got up on the platform. They were about six feet apart when Hardy made his reply to Arnold. I had hold of Hardy at the time. Words grew hot between him and Arnold. He advanced on Arnold and they advanced on each other. When they got together I still had hold of Hardy, and got between him and Arnold. Hardy pushed me out of the way and they commenced scuffling, and Hardy backed or pushed Arnold up against the depot. While this was going on I stood down near the edge of the platform, as I saw a train coming and was afraid the boys would get on the track and be run over. As soon as Hardy got Arnold up against the depot the latter hallooed : 'Take him off, George, take him off, he has cut me three times ; he will kill me, run for a doctor.' Hardy said : ' Yes, take me off or I will kill him.' I ran up, pulled Hardy off, and seeing that Arnold was about to fall, caught him and eased him down on the platform and ran for a doctor. I saw no more of Hardy. Arnold had no weapons in his hands ; there were none on the platform where he fell or around him, nor on his body when the *post mortem* was held. I was gone for the doctor but a few minutes, when I came back Arnold was lying where I had eased him down, dead."

One of the wounds was inflicted upon the left breast of deceased between the shoulder and the middle of the breast, penetrating the large artery which carries the blood out of the heart and would cause death, according to the evidence, in from one to five minutes. After the killing Hardy disappeared, and on learning the next morning that Arnold was dead, said, " I will hang," and three days afterwards was captured in the woods by parties out in search of him. The facts in evidence characterize the crime as murder. Defendant, after having provoked the difficulty, before entering into it, prepared himself with a deadly weapon which, in the encounter

which ensued, he used with such fatal effect upon the deceased, who, according to the evidence, at the time the fatal blow was struck, had the deceased backed up against the depot and completely in his power. Under the circumstances the court did not err in confining the instructions to murder in the first and second degrees. *State v. Palmer*, 88 Mo. 568, 572; *State v. Partlow*, 90 Mo. 608; *State v. Ramsey*, 82 Mo. 138; *State v. Jones*, 79 Mo. 441.

Finding no error in the record, the judgment is hereby affirmed. All concur, Sherwood and Black JJ., in the result.

SHERWOOD, J., CONCURRING.—My concurrence is based solely on the ground that it is a case of murder in the first degree and no self-defence in the case.

BRACE, J., CONCURRING.—I concur in the result on the same ground.