————o————

THE STATE OF MISSOURI, Respondent, *vs*. TRAVIS HARRIS, Appellant.

1. *Continuances to adjourned terms—Power of court to grant.*—On an application for continuance, where an adjourned term next ensues, the court may in its discretion continue the cause to that instead of the next regular term.
2. *Instructions not warranted by the evidence, or stating its weight, etc., improper.* —Instructions not warranted by the evidence, or which undertake to tell the jury what force and effect it shall have, are improper.
3. *Instructions—Proper ones may be refused, when.*—Refusal of instructions cannot be taken advantage of, where others given supply their place.
4. *Criminal law—Dangerous character and threats of deceased will not extenuate homicide, unless defendant had reasonable ground to fear great bodily harm.*— On indictment for murder, proof of mere threats and ill-will toward defendant on the part of deceased, and of his general character as a dangerous man, cannot extenuate the homicide. It must further appear that deceased made some attempt to execute his threats, or wreak his malice, or that his character or conduct were such as to produce a well grounded apprehension of grave and imminent bodily harm. And such threats and animosity and bad character of deceased, are facts which may be considered by the jury in determining whether the accused had reasonable cause to apprehend personal injury.

*Appeal from Scott Circuit Court.*

*Louis Houck, with John D. Foster,* for Appellant.

*John A. Hockaday, Att'y Gen'l,* for Respondent.

WAGNER, Judge, delivered the opinion of the court.

As preliminary to the main questions raised in this case, we will first consider the points in reference to the applications for a continuance and change of venue. At the term at which

the defendant was arraigned, he moved for a continuance, on the ground of the absence of one Fricke, who, he alleged, was a material witness. The court granted the continuance to an adjourned term about to be held, but not to the next regular term. When the adjourned term convened, the application was renewed to continue till the regular term, but this was overruled, because the witness Fricke was then present in court, and the defendant could call him and have the benefit of his testimony if he desired it.

The granting of a continuance rests greatly in the discretion of the court trying the cause, and where an adjourned term is about to be held, it may well be made to apply to that term, if the witness can be procured by that time, and it does not by any means follow that a continuance can only be allowed to a general term.

The purpose of a continuance is to enable a party to get ready for trial, and obtain the attendance of his witnesses, and if that can be done as well at an adjourned term as at the regular term, then the object sought for in the application is accomplished. The only ground alleged for the continuance was the absence of Fricke, and as, when the cause was called at the adjourned term, he was present at court, and could be called on to testify, there was no reason for any further delay or continuance, and this point therefore must be ruled against the defendant.

The application for change of venue was based on the ground that the inhabitants of the county were prejudiced against the defendant. The court heard the testimony of witnesses on this question, and then overruled the application.

The act of 1873, amending the 19th section of the law on criminal practice in regard to changes of venue, provides that the petition of the applicant for a change of venue shall set forth the grounds upon which such change of venue may be sought, and the truth of the allegations thereof shall be proved to the satisfaction of the court by legal and competent evidence, which may be rebutted by evidence offered by the prosecuting attorney. (Acts 1873, 57.)

This law was here followed, and both sides introduced testimony in respect to the truth of the allegations in the petition for a change, and the evidence failed to satisfy the court that the inhabitants of the county were prejudiced against the defendant. There is manifestly nothing in the ruling to justify our interference, and we cannot say that the court abused its discretion or decided wrongly.

The indictment was for killing one Masterson, and the defendant was convicted of murder in the first degree. It appears that the parties had some violent words just previous to and at the time of the killing, but when the defendant pulled out his pistol and shot Masterson, there is no evidence that the latter was making any demonstration against defendant's person, and the proof shows that he was not armed. Whilst bandying their epithets and abusive language Masterson was standing with a coal oil can on one arm, and with the other hand hanging by his side, or in his coat pocket—it is not certain which—when the defendant seized his pistol and fired the fatal shot. There was testimony tending to show that Masterson had made threats against the defendant, and also that he was a dangerous and turbulent man. But the court refused to admit evidence showing that the deceased entertained ill-feelings towards the defendant.

Whilst in some cases this evidence might be highly proper, it is obvious that in the present case there was no material error in the ruling. Evidence had already been admitted showing that the deceased had made threats against the defendant, and that was to a great extent indicative of the feeling harbored by Masterson, the deceased. But the facts, as found by the jury, are, that at the time of the shooting, Masterson made no assault upon or demonstration towards the defendant showing an intent or design to commit upon him personal injury. Under certain circumstances, threats and ill-feeling will have a tendency to mitigate or characterize the grade of the offense, but they will never extenuate an assault upon, or the murder of, the individual uttering them, when he is making no efforts or attempts to carry them out.

Threats and ill-feeling are harmless, provided they are not executed, but where they exist, they are sufficient to put the person threatened on his guard, and will often justify an aggressive line of action on his part, which would be indefensible under other circumstances.

The counsel for the defendant complain in this court of the third and fifth instructions given for the State. The third instruction told the jury, that if they believed from the evidence, that the defendant, Travis Harris, as charged in the indictment, willfully, and with deliberate premeditation, on purpose, and of his malice aforethought, shot Squire Masterson with a derringer pistol, a deadly weapon, on the 3rd of November, 1874, in the county of Scott, and State of Missouri, and that the said Squire Masterson came to his death by reason of said pistol shot, and at the time and during the altercation or talk between Masterson and Harris, the said Masterson was unarmed, and did not then make any threats of violence, or attempt any assault upon the person of Harris, then there is no self-defense in the case, the defendant is guilty of murder in the first degree, and the jury should so find.

The fifth request or declaration says: " The court instructs you that although you may believe from the evidence that Masterson had the reputation of being a vindictive, rash, dangerous and turbulent man, and that he had, previous to the killing, made threats against Harris, and that these threats had been communicated to Harris, yet these circumstances alone cannot justify, or excuse, or palliate the offense of murder, provided you further believe from the evidence, that at the time of the killing, Masterson made no threats against Harris, and made no assault and used no personal violence against Harris, but on the contrary, he, the said Masterson, was at the time unarmed and unoffending."

These instructions were unquestionably correct. Although previous threats might have been made, yet if there was no attempt made to put them in execution, they furnished no excuse or palliation for killing the deceased; and although a

man may be a very bad man, rash, vindictive and turbulent, still he is under the protection of the law, and whilst he behaves himself peaceably, is entitled to the same protection as any other individual, and no person may slay him with impunity. It is only when he assumes a threatening attitude that his character may be considered as justifying conduct that would not constitute a defense in a case of another person of a different character.

It is further objected that the court erred in refusing two instructions asked for by defendant. They are as follows: " If the jury believe from the evidence that Masterson made threats against the person of Harris, on the day of the killing, prior to the time that Masterson came up with Linton to the place where the shot was fired, and that on prior occasions, and a short time previous thereto Masterson had made threats against the life and person of Harris, and that such threats were communicated to Harris, the jury may well infer that Masterson sought and came with Linton for the purpose of executing his threats; and should the jury further believe from the evidence that Harris had reasonable cause to believe, from the threats communicated to him, and by the conduct of Masterson at the time of the shooting, that there was great and imminent danger of such threats being executed by Masterson, and that there was great and imminent danger of his own life, and while so laboring under such impression shot and killed Masterson, although the jury themselves may believe there was no imminent danger to Harris at the time —the jury must acquit the defendant."

" The jury are instructed, that in considering the condition of Harris' mind at the time of the shooting, they have the right to take into consideration the threats, conduct, actions and demonstrations made at and prior to that time, as well as the general bad, dangerous, vindictive and revengeful character of Masterson ; and if the jury should believe from all the facts and circumstances as testified to by the witnesses, that, at the moment the shot was fired, Harris had reasonable cause to believe that there was great and impending danger of such

threats being carried into execution, the jury must acquit the defendant."

Before making any comment on these last two instructions refused, it becomes necessary to briefly notice the instructions that the court gave at defendant's instance.

Upon the question as to whether the defendant had reasonable cause to apprehend personal danger from the deceased, several instructions were given. One told the jury, that if they believed from the evidence, that at the time Harris killed Masterson, the former had reasonable cause to apprehend a design that Masterson intended to do some great personal injury to him, Harris, and that there was reasonable cause to apprehend immediate danger of such design being accomplished, then Harris was justifiable, and the jury should find him not guilty. Another one instructed the jury, that if they believed from the evidence, that Masterson made threats against the life and person of Harris, which threats were made prior and continued down to within a short time before the shot was fired, on the day Masterson was killed, and that such threats were communicated to Harris a few moments prior to the shooting, and that Masterson, in company with Linton, approached Harris with angry and insulting language, and that he sought the difficulty with Harris, and that Harris had reasonable cause to apprehend that Masterson would execute his threats and accomplish his designs, then Harris was justifiable in the shooting, although the jury might believe there was not imminent danger at the time; and the verdict should be for acquittal.

Again, the jury were further instructed, that if they believed from the evidence that Harris had reasonable cause to apprehend that Masterson designed, and was about to inflict great bodily harm upon him, and that he had reasonable cause for believing that the danger was great and imminent, and that such design on the part of Masterson would be immediately accomplished upon him, then, and in that event, he was justifiable and should be acquitted. And upon its own motion the court gave an instruction to the jury, that if

they believed from the evidence that Masterson made threats against Harris to take his life on the day of the shooting and prior thereto, and that such threats were communicated to Harris before the killing of Masterson, and if they should further believe from the evidence, that Masterson was a dangerous, violent, vindictive and turbulent man, these were facts and circumstances that the jury might properly take into consideration in determining whether Harris had reasonable cause to apprehend great personal injury to him at the time he shot Masterson.

We think it would be hard to find in the whole range of criminal practice instructions more favorable to the prisoner. They assert the law of self-defense with the greatest latitude, and give the defendant the benefit of acting under reasonable apprehensions of bodily harm, to the fullest extent. The instructions refused were rightfully refused. They were not warranted by the evidence, and they undertook to tell the jury what force and effect the evidence should have. But their place was supplied by the instruction of the court, in a much clearer and better shape. That instruction was so favorable to the defendant that it is impossible for him to predicate an objection to it. It declared that the threats made by Masterson, and his violent and dangerous character, were all facts and circumstances which might be taken into consideration in determining whether defendant had reasonable cause to apprehend personal injury.

The evidence shows that Masterson was unarmed at the time he was killed, and the finding of the jury is, that the murder was coolly and deliberately committed, and that the defendant had no reason to apprehend that he was in danger of any personal violence from the deceased. The trial was fair and impartial; the verdict cannot be disturbed.

Let the judgment be affirmed; the other judges concur.