State v. Brown.

------o------

STATE OF MISSOURI, Respondent, vs. FRANK BROWN, Appellant.

| 63 | 439 |
|---|---|
| 165 | 412 |
| 63 | 439 |
| 177 | 2716 |
| 63 | 439 |
| 175 | 2231 |

1. *Practice, criminal—Murder—Testimony in chief offered in rebuttal—Admission of discretion of court as to.*—Where it appeared from the testimony already offered that defendant in a trial for murder had threatened some days before hand to shoot the deceased, it was held that the court properly exercised its discretion in permitting the State, after the close of defendant's case, to show that on the day of the homicide he had come armed to the town where the homicide occurred, especially where the defense is permitted to rebut such additional testimony.

2. *Homicide—Self-defense—What proof sufficient to show—What not.*—Where one tried for murder is shown to have previously prepared himself, and selected the time and place and sought for a difficulty in order to wreak his malice, evidence merely showing previous threats by the deceased, should be disregarded. The doctrine of self-defense cannot be invoked in such state of facts. On the other hand, if defendant had reasonable cause to apprehend a design of the deceased to kill him, and that the danger was imminent—al-

though such was not the fact—and defendant commits the homicide to prevent his own killing, his act is self-defense. And proof that deceased was of a rash, turbulent and violent disposition, and had threatened to kill him. and that these facts were known to the accused, are circumstances which should be considered in determining the reasonableness of his apprehensions.

3. *Instructions—Refusal of—Evidence.*—An instruction not based on the evidence is properly refused.

4. *Practice, civil—Murder—Motion for new trial—Presence of accused.*—The absence of defendant convicted of murder, during motion for new trial, is no ground for reversal; such motion is no proceeding during the trial, such as is contemplated by the statute.

### Appeal from Buchanan Circuit Court.

*A. H. Vories,* for Appellant. cited : State vs. Sloan, 47 Mo. 604-13 ; State vs. Linney, 52 Mo. 41 ; State vs. Scott, 17 Mo. 521 ; State vs. Keene, 50 Mo. 358 ; State vs. Buckner, 25 Mo. 167 ; State vs. Cross, 27 Mo. 332 : State vs. Mathews, 20 Mo. 55 ; State vs. Jones, 61 Mo. 235 ; State vs. Underwood, 57 Mo. 40–51 ; Kelley's Crim. Law & Prac., § 132, and authorities there cited ; 17 Q. B. 503 ; 6 Eng. Law & Eq., 352, 504.

*J. A. Hockaday,* for Respondent, cited : State vs. Harris, 59 Mo. 554 ; State vs. Starr, 38 Mo. 270 ; State vs. Levering, 52 Mo. 40, and argued that in State vs. Underwood, the court passing on the case, regarded the trial as over when the motion was heard.

NORTON, Judge, delivered the opinion of the court.

The defendant was indicted at the March Term, 1875, of the Buchanan circuit court, for the murder of James B. Spratt. Defendant was put upon his trial at the July Term, 1875, of said court, and was convicted of murder in the first degree. A reversal of the judgment is sought,

1st, because the court admitted irrelevant and incompetent evidence ;

2d, because the court erred in giving instructions for the State, and refusing instructions for defendant ;

3d, because the record does not show that defendant was present in person when the motion for new trial was overruled.

These objections will be considered in the order in which they are made, and to present the first objection fully, it will be necessary to advert briefly to the facts of the case as disclosed in the bill of exceptions.

It appears from the evidence that on the 25th day of December, 1874, Spratt, the deceased, was in the town of De Kalb, Buchanan county, for the purpose of attending a trial before a justice of the peace, in a cause in which he was a party; that the trial was to take place in a house occupied by one Hisle as a shoe shop; that about thirty minutes before the case was called for trial, and after the arrival of Spratt in the town, the defendant, who had previously arrived, went into the room where the trial was to be had, placing himself at a window, when a pistol in his possession was accidentally discharged. Spratt, the deceased, on being called into court by the constable, proceeded, in company with his son John, to Hisle's shop, and as he stepped into the door, defendant shot the deceased with a pistol, the ball entering his mouth, passing through the palate and lodging in the neck bone. Spratt died from the effects of this shot on the 5th of February, 1875. It appears from the evidence that some three or four weeks previous to the shooting, defendant had charged the deceased with selling him sick beef, and that deceased threatened to kill the defendant, or have it done, and that about half an hour before the shooting, deceased said he would kill the defendant that day. These threats were communicated to the defendant.

At the time the fatal shot was fired by defendant, the witnesses on the part of the State swore that nothing was said either by the deceased or defendant, and that they observed no hostile demonstration on the part of deceased; several of them stating that the hands of deceased when he entered the door were down by his side, and two of the defendant's witnesses stating that his right hand was thrown around under the left skirt of his coat.

It was shown that the son of deceased, immediately after his father was shot, fired upon defendant, wounding him in the arm and breast. It was also shown that defendant upon being asked why he had not killed Spratt, replied that he supposed Spratt

must have seen him and thrown up his head, and it was also stated by another witness that deceased said he had been shot by Wallingford. The evidence for the prosecution further showed that defendant, about two weeks previous to the difficulty, had threatened to shoot deceased, and on the day that it occurred, said he would put a bullet through his head. It was also shown that Spratt, when he was shot, had a pistol in a belt, buckled around him, and it was said by several witnesses that he had the character of being a turbulent, violent man. After the defendant had closed his evidence, the State offered several witnesses in rebuttal, one of whom, Dr. Rose, stated "I saw Brown that morning come into town; I think he had a gun; saw him with Sam King and the Ray boys; heard nothing said by them; they went towards the court house; saw Brown at Derge's drug store, and saw the gun in the store; afterwards, next morning, it was found loaded with powder and shot and three balls. John Spratt drew the load. Men frequently came into town with loaded guns during Christmas."

The above statement is the only evidence excepted to by defendant, and it is insisted that the court erred in admitting it, because it was incompetent and irrelevant and not rebutting, but original evidence.

This point must be ruled against the defendant. Threats of the defendant that he would shoot Spratt and put a bullet through his head having been proven, it was entirely competent for the State to show that he came to town on the day of the difficulty prepared to execute his threat. Although the evidence which was admitted was not strictly by way of rebuttal, but more in the nature of original or additional evidence, yet it was within the discretion of the court to receive it, and in receiving it, we think that the discretion was neither unsoundly nor improperly exercised, especially when it is considered that defendant was allowed to introduce a witness to rebut the facts stated by the witness Rose.

The fourth and fifth instructions given on behalf of the State against defendant's objection, told the jury in substance, that if defendant wilfully, deliberately, premeditatedly, and with malice (these terms having been properly defined by the court in another

instruction,) shot the deceased with a pistol, and had previously prepared said weapon and sought that particular time and place to do the deed, evidence of threats on the part of deceased, and of the character of deceased is immaterial and will be disregarded.

The fifth instruction declared that the right of self-defense, which justifies homicide, does not imply the right of attack, and the plea of justification in self-defense cannot avail in any case, when it appears that the difficulty was sought for at the time and place by the party, in order to afford him an opportunity or pretense for wreaking his malice, and that, if defendant sought the difficulty at Hisle's shop and shot deceased for the purpose of wreaking his malice, then there is no self-defense in the case and the jury should convict.

These instructions, when considered in connection with the third and fourth given for defendant, placed the law of the case in the most favorable light for the defendant, and in view of the facts disclosed on the trial were eminently proper.

The jury were told in the third instruction that if they believed that deceased was of a rash, turbulent and violent disposition, and just prior to the shooting had threatened to kill defendant, and that defendant knew of such disposition and threat, that these and all other circumstances in evidence should be considered by them in determining the reasonable cause of defendant's apprehension of great personal injury to himself.

They were further instructed, that if defendant (Brown) had reasonable cause to apprehend a design on the part of deceased to kill him, and that there was reasonable cause to apprehend danger of the immediate accomplishment of such design, and that defendant killed deceased to prevent the accomplishment of such design, they should acquit the defendant; and "that to acquit on the ground of self-defense, it was not at all necessary that the danger should have been real or actual, or that such danger should have been then impending and about to fall on him; it is only necessary for the jury to believe that defendant had reasonable cause to apprehend that there was danger of immediate accomplishment of a design to kill him."

The above declarations taken together gave to defendant the full benefit of the law of self-defense, and in the most decided and emphatic language, and the court in giving the two instructions objected to by defendant, went no farther than the facts of the case warranted, and was fully justified in its action by repeated decisions of this court. (State vs. Starr, 38 Mo. 270; State vs. Harris, 59 Mo. 550; State vs. Linney, 52 Mo. 40.)

The sixth instruction asked by defendant to the effect that if the jury believed that prior to and up to the time of the shooting, the deceased and his son John had either conspired or agreed together that they would kill defendant or do him great bodily harm, or that they acted in concert with reference to such design, then the act and threat of one is the act of both, was properly refused. In looking through the record we have failed to find any evidence on which the instruction could be based, and hence it should not have been given.

The seventh and eighth instructions for defendant are but repetitions of the principles of self-defense enunciated in the fourth instruction which had been given, and for that reason they should have been refused, as they were.

The only remaining objection is based upon the action of the court in determining the motion for a new trial, in the absence of the defendant.

We have not been able after an examination of the authorities within our reach, to find a case in which it has been decided that a judgment would be reversed because the record did not show that the accused was present when a motion for new trial was passed upon by the court. Our statute provides "that no person indicted for a felony can be tried unless he is personally present during the trial." A trial is the judicial examination of the issues between the parties whether they be issues of law or fact. An issue of law arises upon demurrer or an allegation of fact in a pleading by one party, not controverted by the other. An issue of fact arises when the allegations in an indictment are denied by the defendant, or the allegations of any subsequent pleading are controverted. During the trial and determination of such issues, a prisoner charged with a felony must be present in person.

This court has repeatedly decided that the accused must not only be present during the trial, but that he must be present when the verdict is received, for the reason that it is the right of the prisoner, on the return and reception of the verdict, to inquire of each juror whether the verdict produced is his verdict, and that to exercise this right his presence is necessary.

The motion for a new trial concedes that a trial of the issues has taken place, and proposes to do away with the trial had and have another or new trial ordered, and is not such a proceeding during the trial as is contemplated by the statute or embraced within its terms. We have been cited to the case of the State vs. Underwood (57 Mo. 40), as an authority sustaining the view that it is error to determine a motion for a new trial in the absence of the defendant. In that case the record showed the presence of the defendant when the motion was finally acted upon, and hence the point made here was not before the court, nor was it decided.

Judge Wagner, who delivered the opinion, remarks: "Every person indicted for a felony must be present during the trial; but here no step was taken in the trial during defendant's absence. After the trial was over, the court requested the attorneys to furnish it with any authorities they might have bearing on a legal question involved in the motion, and also to state their views concerning the same, but no further action was taken, no ruling was made, and nothing transpired having any reference to the trial. When the time arrived for the court to proceed with the determination of the motion, defendant was present, the final argument was made, and the court acted in his presence."

If any deduction is to be made from what was said in that case, it would seem to be that the court regarded the trial as being over when the motion for a new trial was made, for it is stated "after the trial was over" authorities were furnished bearing on a legal question involved in the motion for a new trial.

We have also been cited to the case of Regina vs. Caldwell, (6 Eng. L. & E. R., 352) as bearing on the point before us. The defendant in that case was found guilty of perjury and sentenced to transportation for seven years. His counsel was about to move for a new trial when Lord Campbell, C. S. asked if defendant

was in custody under the sentence, and on being informed that he was not, refused to entertain the motion, observing "that the case was one in which peculiarly the defendant ought to be in court, because sentence had been passed upon him, which he has hitherto evaded; and he shall not make experiment of trying to get a new trial without subjecting himself to being taken for the purpose of enforcing the sentence, if the court should refuse the rule."

It was also decided in the case of Rex vs. Askew and Rex vs. Lord Cochran, (3 Man. & Sel. 9) that a motion for a new trial, made by one of the two or more who had been convicted, would be denied unless all who had been convicted were present. Lord Ellenborough observed "that the reason clearly was to prevent the most guilty from keeping out of the way, and putting forward the least guilty in order to try the result of a motion for a new trial." These cases were decided not upon the ground that defendant had a right to be present when the motion for a new trial was determined, but on the ground that the State had a right to demand the presence of the accused in order that he might be subjected to punishment, should the motion be denied. And the court went so far as to deny the motion of one defendant who was present, those who were convicted with him being absent, and not in custody.

Perceiving no error in the action of the trial court, and it appearing that defendant on the trial had the full benefit of all the rights and defenses accorded to him, the judgment is affirmed; in which the other judges concur, except Judge Wagner, absent.