86    309
e172  ¹649

THE STATE V. ANDERSON et al., Appellants.

1. Criminal Practice : MURDER : INSTRUCTION. On a trial for murder, an instruction is not erroneous which tells the jury that if they believe the defendants guilty of murder in the first or second degrees, but have a doubt as to which degree, they will give them the benefit of such doubt, and convict of the lesser degree.

2. ———: INSTRUCTION. An instruction held not erroneous because it did not confine the belief of the jury to the evidence, they having been sworn to try the case on the evidence, and it appearing they could not possibly have supposed they were permitted by the instruction to base their verdict upon anything but the testimony in the case.

3. Criminal Law : One may bring on a difficulty and follow it up in a manner which will not justify the other party in killing him.

4. **Criminal Practice:** DEFENDANT TESTIFYING. A defendant who has testified is entitled to have instructions predicated on the facts sworn to by him just as if he were a disinterested witness.

5. ——— : TRANSCRIPT OF BILL OF EXCEPTIONS. The clerk of the trial court in making a transcript of the bill of exceptions cannot insert instructions not contained in nor called for by such bill.

6. **Practice in Supreme Court :** CERTIORARI. A transcript certified to the Supreme Court in return to a writ of *certiorari*, supersedes the one previously filed, and the latter cannot be regarded in determining the cause.

7. ——— : BILL OF EXCEPTIONS : INSTRUCTIONS. The Supreme Court will not presume that proper instructions were given by the trial court for the defendant, where the bill of exceptions only discloses that instructions were given for the state, and that others were asked for by defendant and refused.

8. **The Evidence** in this case held not to authorize an instruction for any degree of manslaughter.

*Appeal from Carroll Circuit Court.*—Hon. James M. Davis, Judge.

Reversed.

*W. M. Eads* and *L. H. Waters* for appellants.

(1) The court erred in giving several of the state's instructions. (*a*) The first and second instructions do not properly define the different degrees of murder, there was no evidence tending to show that Baugh was present, assisting Anderson in killing Rea. (*b*) The third instruction authorized a conviction, although the jury entertained a doubt as to the degree of the offence committed. (*c*) The fourth instruction told the jury that if they believed beyond a reasonable doubt that Anderson was guilty, etc. Their belief should have been confined to the evidence. (*d*) The eighth instruction told the jury that they must consider whatever defendants have said since the shooting, in relation thereto, "all together." This instruction assumes that defendants were so connected with the

killing that each was bound by what the other said. (2) The court erred in refusing defendants' instructions marked *a*, *b*, *c* and *d*, in the bill of exceptions. (*a*) The court should have instructed the jury that if they entertained a doubt as to whether Anderson, in killing Rea, acted maliciously, or in self-defence, he could not be convicted. (*b*) The court erred in refusing to instruct the jury that if Rea brought on a difficulty, and in following it up was killed, that such killing was not murder. (*c*) The defendants had a right to defend not only their persons, but their cabin. (3) The court will not consider any instructions or motions unless they are set out in the bill of exceptions. *Collins et al. v. Barding*, 65 Mo. 496 ; *State to use, etc., v. Eldridge*, 65 Mo. 584 ; *State v. Shehane*, 25 Mo. 565. The case to be tried is that made by the records. The court will neither assume that there was evidence authorizing an instruction given, nor that such instructions were given as the evidence would warrant. (4) It seems to us that the court, on reading the evidence, must conclude that the verdict is wrong. There is a grave doubt if defendants are guilty of murder in the second degree, and the sentence is cruel and unusual. (5) The conviction of Baugh was not authorized under the evidence.

*Shewalter & Sebree* also for appellants.

(1) The court, of its own motion, should have instructed as to manslaughter. *State v. Banks*, 73 Mo. 597 ; *State v. Robinson*, 73 Mo. 308 ; *State v. Edwards*, 71 Mo. 324 ; *State v. Hill*, 69 Mo. 452 ; *State v. Branstetter*, 65 Mo. 152. (2) The instruction numbered two given for the state is fatally defective in failing to use the word "feloniously." R. S., secs. 1232–3. (3) The fourth instruction given on behalf of the state is likewise erroneous. *State v. Ross*, 29 Mo. 40 ; 1 Bishop C.

P., sec. 546.    (4) The trial court committed error in fail-
ing to define the word "feloniously."

*B. G. Boone*, Attorney General, and *J. L. Peak* for
the state.

(1) The indictment is properly drawn.    Both de-
fendants are charged as principals in making the assault
—Anderson as the immediate perpetrator of the crime,
and Baugh as present aiding and abetting.    It is not
material which one is charged with having inflicted the
fatal wound.    Both are principals, and the law imputes
the injury given by one as the act of the other.    *State v.
Dalton*, 27 Mo. 13 ; *State v. Ross*, 29 Mo. 32 ; *State v.
Davis*, 29 Mo. 391.    The instructions given on behalf of
the state present the case fully and fairly.    The first in-
struction is a plain and clear statement of the law as to
murder in the first degree.   ·The evidence justified the
instruction.    *Green v. State*, 13 Mo. 382 ; *State v. Jen-
nings*, 18 Mo. 435 ; *State v. Ross*, 24 Mo. 483 ; *State v.
Hollenscheit*, 61 Mo. 302 ; *State v. Foster*, 61 Mo. 549.
The second instruction properly defines murder in the
second degree, and there was evidence to support it.
*State v. Underwood*, 57 Mo. 40; *State v. Lane*, 64 Mo.
319 ; *State v. Peak*, 85 Mo. 190.    It was unnecessary in
defining murder in the second degree, that the meaning
of "feloniously" should be explained.    This word is
not an element of crime, but is only used in classifying
offences.    It is only where words constitute distinct ele-
ments of crime, and are technical, that they need be
defined.    *State v. Snell*, 78 Mo. 240.    The evidence in
·this case might properly have been applied to either
murder in the first or second degree.    *State v. Lane*, 61
Mo. 319, and cases cited.    The degree was a question for
the jury to determine from all the facts in evidence.
*State v. Foster*, 61 Mo. 549.    The fourth instruction was
proper.    2 Bish Cr. Pro. (3 Ed.) sec. 7, and authorities
cited ; *State v. Hollenscheit*, 61 Mo. 308 ; *State v. Miller*,

70 Mo. 604. The technical words constituting the elements of the crime charged are properly defined in the fifth instruction. *State v. Weiners*, 66 Mo. 13 ; *State v. Banks*, 73 Mo. 592 ; *State v. Kotovsky*, 74 Mo. 247. The sixth instruction, defining a reasonable doubt, has been repeatedly approved by this court from 1857, *State v. Nueslein*, 25 Mo. 111, to 1883, *State v. Jones*, 78 Mo. 282. The seventh instruction in regard to self-defence has, under a similar state of facts, uniformly been approved by this court. *State v. Starr*, 38 Mo. 270 ; *State v. Linney*, 52 Mo. 40 ; *State v. Underwood*, 57 Mo. 50. The eighth instruction in regard to admissions has been sanctioned by this court. *State v. Carlisle*, 57 Mo. 102 ; *State v. Hill*, 65 Mo. 84. The ninth instruction in regard to the admissions of one defendant not affecting or binding the other was correct. *State v. Daubert*, 42 Mo. 239 ; *State v. Duncan*, 64 Mo. 262 ; *State v. Reed & Fredericks*, 85 Mo. 145. The tenth instruction as to the credibility of witnesses, and the eleventh, as to defendant's testimony, demeanor on the stand, etc., have been sanctioned so often by this court as not to require the citation of authorities to prove their correctness. (2) The trial court was not authorized to give an instruction for manslaughter in any degree. The evidence showed that the offence was either murder in the first or second degree, or self-defence. *State v. Kilgore*, 70 Mo. 547 ; *State v. Ellis*, 74 Mo. 207 ; *State v. Johnson*, 76 Mo. 121 ; *State v. Snell*, 78 Mo. 240 ; *State v. Jones*, 79 Mo. 441. Courts, in the trial of defendants charged with murder, should not instruct as to manslaughter, unless there is evidence to support such instructions. *State v. Edwards*, 71 Mo. 312. The uncontradicted testimony was that the homicide was intentional and committed with a deadly weapon. Under this state of facts it would have been error for the court to have instructed other than it did. *State v. Alexander*, 66 Mo. 148. (3) Several instructions were asked by defendants. Those marked A, B, C, and

D, respectively, having been refused, while a number of others, not presented in the return to the *certiorari*, but appearing in the first transcript, were given. The ones refused are not specifically mentioned in the motion for a new trial. This court will not review matters of exception not brought to its attention by a motion for a new trial; nor will it review mere matters of exception to which no objection was made in the progress of the trial, although attention is called to them in the motion for a new trial. *State v. Ray*, 53 Mo. 345; *State v. Pints*, 64 Mo. 318; *State v. Williams*, 77 Mo. 310; *State v. McDonald*, 85 Mo. 539. When it clearly appears that other instructions than those preserved were given, the presumption is, that the court properly instructed the jury. If the party appealing does not bring up the full record, the Supreme Court will infer that the action of the lower court was proper as to matters omitted. *State v. Tucker*, 84 Mo. 23; *Birney v. Sharp*, 78 Mo. 73; *Greenbaum v. Millsaps*, 77 Mo. 474; *Goode v. Crow*, 51 Mo. 212; *State v. Sullivan*, 51 Mo. 522. (4) There is no merit in the objection that defendants were not afforded an opportunity to challenge the array of the grand jury which found the indictment. Such exceptions, when tenable, come too late when made for the first time on a motion for a new trial. *State v. Marshall*, 36 Mo. 400; *State v. Connell*, 49 Mo. 282; *State v. Arnold*, 55 Mo. 89, and cases cited. Defendants cannot object to the composition or organization of the grand jury. R. S., 1879, sec. 1772; *State v. Pitt*, 58 Mo. 556; *State v. Breen*, 59 Mo. 413; *State v. Jones*, 61 Mo. 232; *State v. Hart*, 66 Mo. 208; *State v. Pate*, 67 Mo. 488. The court will not interfere with a verdict on the ground that it is against the weight of evidence.

HENRY, C. J.—The defendants were indicted in the Carroll circuit court for the murder of John Rea, and, on a trial, were convicted of murder in the second degree

at the April term, 1885, of said court, and from the judgment have appealed to this court.

The defendant Baugh and Rea had occupied a cabin together, but had a difficulty, which resulted in their separation, Rea leaving Baugh in possession of the cabin and of some furniture belonging to Rea. ·Baugh had made threats that if Rea ever came back to the cabin he "would stop him at the door." To another witness, that if Rea ever came to his house, "he would never get away alive." On the morning of the eighth of April, 1884, Baugh went over to see Anderson, who is his cousin, and who was sick, and asked him to go home with him. There is evidence tending to prove that Baugh expected Rea to come to his cabin that afternoon for his goods. Anderson accompanied Baugh home, and about six o'clock that afternoon, Rea went to the cabin and was killed near and in front of the cabin door by the defendant Anderson.

The testimony of Anderson and Baugh, if true, made a clear case of self-defence. It was to the effect that Rea came and knocked at the door of the cabin, and was asked by Baugh who it was, and, answering, was told by Baugh that there had been strife between them and he did not wish him to come into the cabin, but Anderson said let him come in, and thereupon Rea entered and commenced cutting Baugh with a knife, who ran out of the cabin followed by Rea, and when Anderson went to the door, he turned back and commencd firing upon Anderson, who got a gun from a rack near the door and shot him.

The following instructions given for the state are complained of :

"3. If the jury believe from all the evidence in the case, beyond a reasonable doubt, that the defendants are guilty of murder in the first degree or second degree, as these offences have been defined in these instructions, *but have a doubt as to the degree of offence* of which the

defendants are guilty, the jury will give them the benefit of such doubt, and find them guilty of the less offence."

"4.    If the jury believe, beyond a reasonable doubt, that the defendant Anderson is guilty of either degree of murder, as defined by these instructions, but entertaining a reasonable doubt as to the guilt of defendant Baugh, then they may convict the said Anderson and acquit the said Baugh."

"8.    In considering what the defendants have said since the fatal shooting, if you find they have said anything in relation thereto, you should consider *it all together*. They are entitled to the benefit of what they said for themselves, if true, as the state is entitled to the benefit of what they said against themselves in any conversation of defendants proved by the state. What they said against themselves the law presumes to be true because against themselves ; but what they said for themselves you are not bound to believe because said in a conversation proved by the state. You may believe it or disbelieve it, as it may be shown to be true or false by all the evidence in the case."

It is objected to the first of the above instructions, that it permitted a conviction for murder in the second degree, if the jury, believing them guilty of murder, had a doubt as to the degree of murder of which they were guilty. If the evidence satisfied the jury, beyond a reasonable doubt, that defendants intentionally and maliciously killed Rea, and the only doubt they had was, whether it was done with the deliberation necessary to constitute the homicide murder in the first degree, but having none whatever that it was committed with the premeditation, which made the crime murder in the second degree, it was their duty, as the court instructed, to find them guilty of the latter crime. Can it be that it was the duty of the jury, so believing from the evidence, to acquit the defendants ? Certainly not.

Nor do we see any objection to the second instruc-

tion, which declared that if, beyond a reasonable doubt, the jury believed Anderson guilty of murder in either degree, but had a reasonable doubt of Baugh's guilt, they might convict Anderson and acquit Baugh. Counsel contend that it is erroneous, in not having confined the belief of the jury to the evidence ; but they were sworn to try the cause on the evidence, and could not possibly have supposed that they were permitted, by this instruction, to base their verdict upon anything but the testimony in the cause. Objection is made to the third instruction, that the jury were told that they must consider whatever defendants had said, since the shooting, in relation thereto, all together, thus permitting what one said to prejudice the other. While such a construction might be placed upon the instruction, considered by itself, yet the court, in an instruction immediately following it, told the jury distinctly that the statements made by either of the defendants were only binding upon him who made them.

The following instructions asked by defendants were refused :

"1. If, after considering all the evidence in the case, the jury shall entertain a reasonable doubt as to whether defendant Anderson, in killing John Rea, acted maliciously or in self-defence, then the jury can not convict him."

"2. The court instructs the jury that if John Rea went to the house of defendant Baugh, and brought on a difficulty with the defendant, and in following up such difficulty was shot and killed by defendant Anderson, then the defendant Anderson, in killing said Rea, is not guilty of murder in either degree."

"3. The jury are instructed that Anderson had the right to go to the cabin of Laurel Baugh along with him and to stay all night with him ; and that if Anderson had lain down on the bed, and Baugh had closed the door, the deceased came to the cabin and asked ad-

mittance, and the door was opened by Baugh, and the deceased made an assault on Baugh with a knife and cut and wounded him, and then and there Baugh attempted to defend himself with a pistol, but failed in his defence and was obliged to retreat or fly from deceased, and ran from the door of the cabin, and immediately or within a very short time thereafter, the deceased rushed again towards the door and assaulted Anderson with a knife and a pistol, or either of them—then Anderson had the right to defend himself the same as if he were in his own house, and if, in repelling said assault, Anderson, in the necessary defence of his person, with a shot-gun, shot at and killed the deceased, then Anderson was justifiable in his act of shooting, and neither of defendants is guilty, and the jury must so find in their verdict.''

The first was properly refused, because the jury had been sufficiently instructed with respect to a reasonable doubt. The second might properly have been refused, because too vague and indefinite. It does not follow from the fact that one brings on a difficulty, and follows it up, that the other may kill him. He may bring on the difficulty and follow it up in a manner that will not justify the other in killing him.

The court erred in refusing to give the third instruction. There was ample evidence upon which to base it, and it makes no difference that the only evidence tending to prove that Anderson and Baugh acted in self-defence was the testimony of themselves. However the jury may treat the testimony of one on trial for a crime, the court, in its instructions, must treat it precisely as if it was the testimony of a disinterested person. The original transcript in this cause contains instructions given for defendants on the theory of self-defence, as favorable to defendants as they had a right to ask, but the transcript filed here, as a return to a writ of *certiorari*, does not show that any instructions were given for

defendants, and in their application for a *certiorari*, counsel for appellants state, and verify it by oath, that "the original transcript purports to set out certain instructions as having been given by the court in behalf of defendants, whereas, in truth and in fact, the bill of exceptions calls for no such instructions, and does not pretend, or state, that any instructions were given on behalf of defendants." What is done in the progress of a trial can only be known and preserved by a bill of exceptions. If the bill of exceptions neither stated that there were, nor called for, instructions given for defendants, the clerk had no authority to incorporate any as given for defendants. We may surmise that the circuit judge overlooked this defect in the bill of exceptions, and that the instructions for the defendants copied were actually given, and this would account for the refusal of the third of the above instructions; but the original transcript has been superseded by the one returned with the writ of *certiorari*, and we cannot look to it in the determination of this cause. Neither can we presume, as contended by counsel for the state, that the court gave all proper instructions. The transcript shows that, at the close of the evidence, the court gave instructions for the state, which are copied in full. That, thereupon, defendants asked the three hereinbefore noticed, which were refused, and, thereupon, the jury retired to consider of their verdict, etc. Those asked by defendants are marked in the transcript as A, B, C, D. There is nothing in this transcript which allows a presumption that any instructions asked by defendants were given.

There was no error in not giving to the jury an instruction in relation to manslaughter. There was no evidence upon which such an instruction could be based. If the testimony of the accused is true, they acted in self-defence, and should have been acquitted. It was a case of self-defence, or murder in one or the other degrees; but, for the errors above indicated, the judg-

ment is reversed and the cause remanded. All concur, except Norton and Ray, JJ., who dissent.

NORTON, J.—I do not concur in reversing the judgment in this case for the following reasons : The original record before this court contained instructions given by the circuit court on behalf of the defendants, placing the law of self-defence before the jury in as strong, 'if not a stronger light, than those copied in the opinion of the court as refused. A motion, accompanied by affidavit, was made, suggesting a diminution of this record, in which it is stated " that the bill of exceptions, as signed by the judge of the circuit court, calls for the instructions given on behalf of the state, and those asked by defendants and refused by the court, marked A, B, C, D, and none others ; that the transcript filed herein contains quite a number of instructions which purport to have been given on behalf of defendants, but which said last named instructions affiant states are not called for in said bill of exceptions, and were copied by the clerk of said Carroll circuit court through the oversight of said clerk, or on his own motion." This motion was sustained and a *certiorari* awarded, in obedience to which the clerk of said court returned a transcript only containing the instructions given on behalf of the state, and those which were asked by the defendants and refused by the court. This transcript does not show that any instructions were given on behalf of the defendants, nor does it negative the fact that none such were given, nor is it anywhere affirmed in the transcript that the instructions copied were all the instructions given in the case.

While I concede that the transcript last returned supersedes the original transcript, still with the *fact* before me, which the motion made for a *certiorari* virtually admits, that instructions were given on behalf of the defendants, I have a right to look at this fact and

indulge the presumption that the instructions which were given on defendants' behalf contained a correct exposition of the law, and that because it had been thus correctly expounded the instructions asked for and refused were, for that reason, properly refused. It will be observed that the motion for *certiorari* does not give, as a reason for asking it, that the instructions given on behalf of defendants, as copied in the original transcript, were not, in fact, given, but the reason given is that the original bill only called for the instructions which were asked for by defendants and refused, and did not ask for those which were copied by the clerk, and given on the behalf of defendants. I take this to be as solemn an admission, that instructions were given for the defendants, as if counsel, in the course of the argument before this court, had admitted that, although the bill of exceptions did not show that instructions were given for defendants; that in truth and in fact, such instructions were given, and that defendants had the full benefit of them on the trial. It is creditable to the conscience of the gentleman who made the affidavit accompanying the motion, that he did not deny the fact that the instructions copied in the original transcript were given.

RAY, J.—I dissent from the opinion of the court in this case for the following reasons : As I understand the opinion, the reversal of the judgment of the circuit court is placed upon the ground of the refusal of the court to give what the opinion designates as the third instruction asked by the defendants, upon the doctrine of self-defence. If the record now before us shows, as I think it does, that other instructions were given by the court substantially embracing the theory of self-defence, and the facts upon which it is based, which fairly sub-

mitted that question to the jury, then I think it is error to reverse for that reason.

The seventh instruction given for the state, and found in this record, under numerous decisions of this court, practically presents that question, and is as follows:

"The jury are instructed that the right of self-defence does not imply the right of attack; a party who seeks or brings on a difficulty, or who voluntarily, of his own free will and inclination, enters into a difficulty, cannot avail himself of the right of self-defence, however imminent the danger, or great the peril in which he may find himself in the progress of the difficulty, and if the jury believe from the evidence, beyond a reasonable doubt, that the defendants, or either of them, provoked, sought, or brought on, or voluntarily and of their own free will entered into a difficulty which terminated in the death of John Rea, then you cannot acquit said defendant or defendants upon the ground of self-defence."

Instructions substantially like this have repeatedly been approved by this court, and held to "give the accused the full benefit of all he could claim in regard to the rights of self-defence." *State v. Underwood*, 57 Mo. 50. To the same effect, also, are the following cases: *State v. Starr*, 38 Mo. 270; *State v. Linney*, 52 Mo. 40; *State v. Shoultz*, 25 Mo. 153; *State v. Christian et al.*, 66 Mo. 138, 145; *State v. Brown*, 63 Mo. 443; *State v. Hudson*, 59 Mo. 135, 138; *State v. Vansant*, 80 Mo. 69, 79.

The only real difference between the seventh instruction given for the state and what is here called the third instruction, asked and refused for the defendants, is that the latter submits the doctrine of self-defence, and the facts upon which it rests, in an affirmative form, while the former practically and substantially submits the same doctrine and facts in a negative form. Otherwise, there

seems to be but little, if any, real difference between them. But concede that the affirmative form is the usual and better way in which to present this question, still, the practice of presenting the question in the negative form has met with frequent approvals of this court, and, if these rulings are to be adhered to, this case should be affirmed. But we may waive this question, and still, I think, there is enough in this record to require an affirmance of this judgment.

The opinion at one point says that "the transcript filed here, as return to a writ of *certiorari*, does not show that any instructions were given for the defendants;" and, at another point, it says that "there is nothing in this transcript which allows a presumption that any instructions asked by defendants were given." This, I respectfully suggest, is hardly an accurate statement of what, upon a careful examination, appears upon the amended transcript itself, now before us. I fully concur in the statement made in the opinion of the court, to the effect that, "what is done in the progress of a trial can only be known and preserved by a bill of exceptions," and giving full effect to that doctrine, it shows, in my opinion, that this judgment ought not to be reversed. The motion for a new trial, made by the defendants and copied in the amended as well as the original transcript, and which is conceded to be as much a part of the bill of exceptions and record in this case as any other portion thereof, shows clearly, I think, that at least one instruction, if not more, was given for the defendants, and under repeated rulings of this court, it has been held that if the party fails to preserve the same in the bill of exceptions, the court, in its absence, will presume that it correctly stated the law, and in such cases the court will not reverse the judgment.

The sixth cause assigned in defendants' motion for a new trial is as follows: "The court erred in refusing defendants' eleventh, twelfth, thirteenth, fourteenth and

fifteenth instructions, and in modifying defendants' seventh instruction, by erasing the words 'if Anderson was in the cabin occupied by defendant Baugh, as his guest, and while there,' and the words ' came to the cabin.' " From this a fair and just inference might, I think, be drawn that instructions prior in number to said number eleven, and from one to ten inclusive, were given on defendants' behalf, and, at all events, it is clearly manifest, I think, that defendants' seventh instruction, modified by the court, was, in fact, given. It makes no difference that defendants' seventh instruction, when thus modified, thereby became and thereafter is to be treated as given by the court, on its own motion, still, it is, nevertheless, an instruction duly given in the cause, and is not preserved in the bill. What that seventh instruction, so modified, was, this bill of exceptions, as I understand it, fails to show. It is only identified by the number, "seventh," and is not otherwise set out or preserved by the bill of exceptions, and, in its absence, this court will presume that it stated the law correctly, and from aught that appears to the contrary, that may have been the reason why defendants' instruction "called for in the bill of exceptions" and identified as letter "D," was refused. 77 Mo. 474; 78 Mo. 73; 76 Mo. 18.

The defendants' motion in arrest, also copied in this record, at least, impliedly shows that instructions were given for defendants. The fifth subdivision of that motion is as follows: "(5) Because the verdict is, and the sentence and judgment on defendants would be against the law." The instructions for the state, manifestly, I think, are not the instructions here alluded to. It is probable, if not certain, that allusion is here made to instructions for defendant, which seem to be absent from this bill of exceptions.

In addition to all that, this bill of exceptions, in the amended record, which alone, it is conceded, must show what was done at the trial of this cause, fails to show

that the defendants, in their motion for a new trial, called the attention of the trial court to the alleged error in refusing defendants' said instructions, "called for in the bill as lettered A, B, C, and D." No instructions, thus lettered and identified, appear in the motion for new trial. The only instructions then complained of as refused, as shown by the record, are marked as numbers eleven, twelve, thirteen, fourteen, and fifteen, and are not set out at length, so as to be thus identified. There is nothing in the present bill of exceptions sent up by *certiorari*, on defendants' motion, by which instruction lettered "D," called for in said bill of exceptions, and herein complained of for the first time, can be identified as any one of these in the motion for a new trial and there described as eleven, twelve, thirteen, fourteen, and fifteen, and, under the rule above stated in the opinion, this can only be done by the bill itself, since what is done at the trial can only thus be known and preserved. *Matlock v. Williams*, 59 Mo. 105; *Campbell v. Allen*, 61 Mo. 582.

It may be conceded that the bill of exceptions, in the transcript now before us, sufficiently identifies the instructions lettered as A, B, C, and D, as those called for in the bill, and it may also be conceded that the defendants, at the time of their refusal by the court, duly excepted to its action in so doing, and it may further be conceded that the defendants filed their motion for a new trial as set out in this bill of exceptions, and duly excepted to the action of the court in overruling the same; but still, it is insisted that the bill of exceptions fails to show that said instructions, so lettered, or either of them, was embraced in said motion for a new trial, or is the same as either of them. This the bill of exceptions alone must show, and this it fails to do. *Matlock v. Williams*, 59 Mo. 105; *Campbell v. Allen*, 61 Mo. 582. It may be, as has been held by this court, that in criminal cases it is the duty of the trial court to give all

proper instructions, whether asked for or not, and that a failure to do so will warrant a reversal. 65 Mo. 155; 61 Mo. 233; 62 Mo. 596; 20 Mo. 55; 66 Mo. 149. But it has never been expressly held, so far as I am advised, nor does it necessarily follow from the above cases, that where instructions, in point of fact, are given or refused, that the accused need not except to the same, or again call the attention of the trial court thereto, by the usual motion for new trial, and again except to the action of the court in overruling the motion, if he wishes to avail himself of alleged errors therein in the appellate court. Indeed the rule, it seems to me, is otherwise, as appears by later adjudications of this court. In *The State v. McCray*, 74 Mo. 305, it is said, that "there is no motion for new trial incorporated in the bill of exceptions; consequently, what occurred at the trial, in the way of evidence adduced, or instructions given or refused, cannot be noticed by us. The rule, in this regard, is the same in criminal as in civil causes." To the same effect, also, are the following cases: *The State v. Dunn*, 73 Mo. 586; *The State v. Robinson*, 79 Mo. 66; *State v. Pints*, 64 Mo. 317; *Matlock v. Williams*, 59 Mo. 105.

The rule in this court, as repeatedly announced, is to the effect that a party will not be heard to complain of error in the giving or refusing of instructions, unless the attention of the trial court is called to the instruction in question in the motion for new trial, and this, the parties in this instance, as I understand the record, have failed to do. *State v. Emery*, 79 Mo. 461; *Birney v. Sharp*, 78 Mo. 73; *Anthony v. St. L., I. M. & S. Ry. Co.*, 76 Mo. 18; *Matlock v. Williams*, 59 Mo. 105; 61 Mo. 582. Indeed, the real question in the case at bar, as I understand the record, is not whether the trial court failed to give any instructions for the defendants, but whether, having given, in a modified form, defendants' seventh instruction, as the record clearly shows, it was not the duty of defendants to preserve that instruction

in their bill of exceptions, and if they have failed so to do, ought not this court in its absence, under prior rulings, presume that it stated the law correctly, and in such case, the refusal of defendants' instruction, lettered "D," would afford no just cause for a reversal of this case.